IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FE'ANA BENT MARYAM,

     Plaintiff,

v.

LSG SKY CHEFS,

Defendant.

CIVIL ACTION FILE NO.

1:23-cv-914-SDG-JKL

## **ORDER AND NON-FINAL REPORT AND RECOMMENDATION**

This matter is before the Court on Defendant's motion to dismiss [Doc. 13]; Plaintiff's motion for default judgment [Doc. 15]; Plaintiff's motion to strike affirmative defenses [Doc. 16]; and Defendant's motion for an extension of time to respond to the motion for default judgment and motion to strike [Doc. 17]. For the reasons that follow, it is **RECOMMENDED** that the motion to dismiss be **GRANTED IN PART AND DENIED IN PART** [Doc. 13], and that the motions for default judgment and to strike be **DENIED** [Docs. 15, 16]. Because this recommendation disposes of the motion for default judgment and motion to strike, is also **ORDERED** that the motion for an extension of time be **DENIED AS MOOT**.

# I.    BACKGROUND

On March 2, 2023, Plaintiff filed this single-plaintiff employment discrimination lawsuit.  [*See* Doc. 3.]  In addition to her form discrimination complaint [Doc. 3 at 1-9], she has appended a copy of her EEOC charge of discrimination and notice of right to sue [*id.* at 10-16], and a few employment documents, including her discharge notification [*id.* at 16-17].

According to her complaint and charge, Plaintiff was employed by Defendant as a storekeeper for roughly two months between October 2022 and December 5, 2022.[1]  [Doc. 3 at 4, 7; *see also id.* at 10 (charge).]  Plaintiff alleges that her supervisor constantly flirted with her, sometimes isolated her to have one-on-one conversations, and even suggested that she enter a romantic relationship with him.  [*Id.* at 7, 10.]  Plaintiff informed her supervisor that his conduct was unwelcome, but also that beyond rebuffing his advances herself, Defendant had no procedures for reporting such conduct.  [*Id.* at 7.]

Separately, during her employment, Plaintiff allegedly observed food being mishandled and reported her safety concerns to management to take appropriate

---

[1] Plaintiff asserts that she was a full-time employee for roughly half of that time.  [Doc. 3 at 7, *see also id.* at 10.]

remedial measures.  [Doc. 3 at 7; *id.* at 10.]  Rather than address those concerns, Defendant soon after terminated Plaintiff's employment.  [*Id.*]  While Defendant asserted that her firing was for wasting food, Plaintiff asserts that the only food she discarded had already spoiled.  [*Id.*]  Plaintiff instead insists that she suffered sexual harassment from her supervisor and was fired for refusing her supervisor's advances, both in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*  [*Id.* ¶¶ 12-14.]

In addition to her Title VII hostile work environment and retaliatory discharge claims, Plaintiff also asserts, without explanation, that Defendant discriminated against her on the basis of her race (which she described as "unknown") and religion (Muslim) in violation of Title VII; violated the American Disabilities Act (the "ADA"), 42 U.S.C. § 12101, *et seq.*; and violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*  [Doc. 3 at 2.]

On July 28, 2023, Defendant moved to dismiss the complaint.  [Doc. 13.]  In it, Defendant first argues that Plaintiff's complaint should be dismissed in its entirety because it is a shotgun pleading.  Defendant also argues that the claims for race, disability, religion, and age discrimination are subject to dismissal because

3

they were not administratively exhausted; and, even if they were exhausted, the complaint does not plausibly allege any causal connection between any of those protected characteristics and any adverse employment action. As for Plaintiff's sexual harassment claim specifically, Defendant contends that it fails because the complaint does not allege facts that would support a finding that Plaintiff endured severe or pervasive harassment, as required to state plausible hostile work environment claim, and her complaint contains neither an allegation that she reported her supervisor's alleged behavior through any established channels nor an allegation that Defendant had knowledge of any harassment. Finally, Defendant argues that Plaintiff has not alleged facts sufficient to show that she was retaliated against for engaging in protected activity under Title VII. [*Id.*]

Plaintiff did not timely respond to the motion to dismiss. On August 15, 2023, the Court directed Plaintiff to file a response by August 30, 2023. [Doc. 14.] On August 21, 2023, Plaintiff filed a motion for default judgment. [Doc. 15.] On that same day, she also filed a "motion to strike affirmative defenses," in which she responded to many of the arguments that Defendant raised in it motion. [Doc. 16.]

For simplicity's sake, the Court first takes up the motion for default judgment, then the motion to strike, and finally the motion to dismiss.

## II.   MOTION FOR DEFAULT JUDGMENT

Upon review, the Court readily concludes that the motion for default judgment lacks merit.  Obtaining a default judgment is normally a two-step process.  The moving party first must show "by affidavit or otherwise" that another party is in default.  Fed. R. Civ. P. 55(a).  That is, upon a showing that a party against whom judgment is sought has failed "to plead or otherwise defend," the Clerk will make an "entry of default" on the docket.  *Id.*  Thereafter, a party may seek a "default judgment."  Fed. R. Civ. P. 55(b).  The Clerk's entry of a party's default is, thus, a prerequisite to the application for entry of a default judgment against that party.  *See* Fed. R. Civ. P. 55; *Bonny v. Benchmark Brands, Inc.*, 1:16-cv-3150-WSD, 2017 WL 1216926, at *1 (N.D. Ga. Mar. 10, 2017); *Sun v. United States*, 342 F. Supp. 2d 1120, 1124 n.2 (N.D. Ga. 2004).  Furthermore, the entry of a default judgment is a "draconian" sanction of "last resort," usually to be entered only in the case of willful or bad faith disregard for court orders.  *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1542-43 (11th Cir. 1985).  A defendant who fails to timely answer or respond to a complaint need only show "good cause" to be allowed to answer and to avoid the sanction of a default judgment.  *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1337-38 (11th Cir. 2014).

5

In this case, there has been no entry of default, and thus the extreme measure of default judgment is not warranted.  Accordingly, it is **RECOMMENDED** that Plaintiff's motion for default judgment be **DENIED**.  [Doc. 15.]

## III.   MOTION TO STRIKE

As noted, Plaintiff has separately filed a "Motion to Strike Affirmative Defenses."  [Doc. 16.]  In substance, however, the motion is a response to the Defendant's motion to dismiss, and the Court has construed it that way.  In any event, the relief that the motion seeks—striking affirmative defenses—is inapplicable because Defendant has not answered the complaint, much less asserted any affirmative defenses yet.  Accordingly, it is **RECOMMENDED** that the motion to strike be **DENIED**.  [Doc. 16.]

## IV.   MOTION TO DISMISS

### A.   Standard of Review

In evaluating a Rule 12(b)(6) motion to dismiss, a court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint need not provide "detailed factual allegations," but it must provide

6

factual allegations sufficient to set forth the plaintiff's entitlement to relief. *Twombly*, 550 U.S. at 555. Providing only "labels and conclusions" is insufficient, "and a formulaic recitation of the elements of a cause of action will not do." *Id.* The Court is not required to accept as true legal conclusions couched as factual statements. *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not [shown]—'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Furthermore, if assuming the truth of the factual allegations of the amended complaint, there is a dispositive legal issue that precludes relief or if it is based on a meritless legal theory, dismissal is warranted. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989); *see also Brown v. Crawford Cnty., Ga.*, 960 F.2d 1002, 1010 (11th Cir. 1992)

In the case of *pro se* litigants, a complaint is to be "liberally construed" and "must be held to a less stringent standard than formal pleadings drafted by lawyers." *Erikson v. Pardus*, 551 U.S. 89, 94 (2007) (citations and internal quotation marks omitted). However, this lenient standard does not shield a *pro se* litigant from complying with minimum requirements of the Federal Rules of Civil Procedure, and a court need not accept as true legal conclusions or unwarranted factual

inferences in a *pro se* complaint.  *Collins v. Fulton Cnty. Sch. Dist.*, No. 1:12-CV-1299-ODE-JSA, 2012 WL 7802745, at 6 (N.D. Ga. Dec. 26, 2012) (citing *Trawinski v. United Techs.*, 313 F.3d 1295, 1297 (11th Cir. 2002) and *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2006)).  So, while a *pro se* complaint need not contain "detailed factual allegations," it must still "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quotation omitted).

With this standard in mind, the Court now turns to its review of Plaintiff's asserted claims.

### B.   Administrative Exhaustion

Title VII prohibits an employer from discriminating against an employee with respect to compensation, terms, conditions, or privileges of employment because of the employee's race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2(a)(1).   The ADEA, meanwhile, prohibits an employer from discriminating against an employee who is at least forty years old on the basis of age.  29 U.S.C. § 623(a)(1).  And in the employment context, the ADA makes it unlawful to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of

employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

Importantly, "[b]efore filing suit under Title VII, the ADA, or the ADEA, a plaintiff must exhaust the available administrative remedies by filing a charge with the EEOC." *Anderson v. Embarq/Sprint*, 379 F. App'x 924, 926 (11th Cir. 2010) (citing 42 U.S.C. § 2000e-5(e)(1), 42 U.S.C. § 12117(a) and 29 U.S.C. § 626(d)). In a non-deferral state, like Georgia, a plaintiff must file a charge of discrimination with the EEOC within 180 days of the date of the alleged discrimination. *Id.* (citing 42 U.S.C. § 2000e–5(e)(1), 42 U.S.C. § 12117(a), and 29 U.S.C. § 626(d)); *see also Manley v. DeKalb Cnty.*, 587 F. App'x 507, 511 (11th Cir. 2014). Only those claims arising within 180 days of the filing of a charge are actionable. *EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1271 (11th Cir. 2002) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)). Untimely claims are barred. *Id.* Additionally, "a plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge . . . ." *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004) (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)); *see also Penaloza v. Target Corp.*, 549 F. App'x 844, 848 (11th Cir. 2013). As a

result, discrete acts of discrimination and retaliation that "occurred prior to the date of the EEOC charge that were not included in the charge" are typically not exhausted and may not be included in a judicial complaint. *Thomas v. Miami Dade Pub. Health Tr.*, 369 F. App'x 19, 23 (11th Cir. 2010). Where a defendant raises a defense that the plaintiff has not administratively exhausted her claims (as Defendant has done here), the plaintiff bears the burden to prove that she has met all conditions precedent to filing suit, including that she met the timely filing and exhaustion requirements. *Roberts v. Archbold Med. Ctr.*, 220 F. Supp. 3d 1333, 1344 (M.D. Ga. 2016).

Here, the only evidence that the Court has that bears on the exhaustion issue is the charge of discrimination that Plaintiff attached to her complaint. [*See* Doc. 3 at 10.] In it, she indicated that she was "discriminat[ed] based upon" her sex and that she was retaliated against, but did not identify discrimination on the basis of her race, religion, age, or disability. [*Id.*] In the narrative portion of the charge, Plaintiff wrote:

> I worked for the above employer through the Wonolo platform starting in Oct. 2022. In Mid-Nov. 2022, I was hired as a permanent employee for the above employer and I worked as a Store Keeper. I reported to the Production Supervisor who is male. During my employment, my Supervisor consistently flirted with me, suggested that I engage in a relationship with him, and would isolate me so he

could have conversations with me.  I informed him that his conduct was unwelcomed and that I was not interested.   During my employment, I witnessed other employees mishandle food and violate the Hazard Analysis Critical Control Points (HACCP) standards. These violations posed serious safety concerns for the public and other workers as such violations could cause sickness or even death. I complained to my management regarding these safety concerns and violations and management failed to take appropriate, remedial measures.  On or about Dec. 5, 2022, I was terminated for discarding food products.  The only food products I discarded were those that were spoiled foods, per the employee handbook.  I did not violate any policies or procedures that warranted my termination, instead, I believe I was terminated in retaliation to refusing my Supervisors sexual advances and speaking up about the HACCP violations . . . .  I believe that I was discriminated against based on my sex (female) and retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended.

[*Id.*]   The foregoing makes clear that Plaintiff complained only of alleged harassment and discrimination based on sex and retaliation for rebuffing her supervisor's advances.  Since she made no mention whatsoever of discrimination on the basis of her race, religion, age, or alleged disability, her Title VII, ADEA, and ADA claims based on those characteristics are unexhausted and should therefore be dismissed.[2]  That leaves only her Title VII sex discrimination and retaliation claims, which the Court will take up presently.

_____

    [2] Even if these claims were somehow exhausted, they would still be subject to dismissal.  Plaintiff has not even identified her own race—writing "unknown" when asked to identify it—much less offered any allegation to suggest that her race or religion played a role in any adverse employment action, or that anyone of

### C.     Sex Discrimination

As noted, Title VII prohibits an employer from discriminating against an employee with respect to compensation, terms, conditions, or privileges of employment because of the employee's sex. 42 U.S.C. § 2000e-2(a)(1).  "Although Title VII itself does not mention sexual harassment, it has long been settled that the statutory phrase 'terms, conditions, or privileges of employment' includes within its scope a discriminatorily hostile or abusive environment."  *Hulsey v. Pride Rests., LLC*, 367 F.3d 1238, 1244 (11th Cir. 2004).

"Sexual harassment in the workplace can alter the terms and conditions of employment in either of two ways."  *Hulsey*, 367 F.3d at 1245.  "One way is if the employee's refusal to submit to a supervisor's sexual demands results in a tangible employment action being taken against her."  *Id.*  An employer is liable under this so-called "tangible employment action harassment" or "quid pro quo"[3] theory if it

_____

another race or religion who was similarly situated to Plaintiff was treated more favorably (for instance, by alleging that a non-Muslim employee avoided discipline after discarding food as Plaintiff did).  Nor does she allege facts that even begin to suggest intentional discrimination on the basis of age or disability; thus, her putative ADEA and ADA claims are also due to be dismissed.  Simply put, these conclusory allegations fail to raise an inference of discrimination on the basis of Plaintiff's race, religion, age, or disability; and, therefore, those claims fail.

[3] The Supreme Court and the Eleventh Circuit have instructed that the term "tangible employment action" harassment is now preferred to the term "quid pro

even unknowingly "permits a supervisor to take a tangible employment action against an employee because she refused to give in to his sexual overtures." *Id.* "That liability exists regardless of whether the employee took advantage of any employer-provided system for reporting harassment." *Id.*

"The second way for sexual harassment to violate Title VII is if it is sufficiently severe and pervasive to effectively result in a change (sometimes referred to as a constructive change) in the terms and conditions of employment, even though the employee is not discharged, demoted, or reassigned." *Hulsey*, 367 F.3d at 1245. This species of harassment, known as "hostile work environment harassment,"[4] differs from tangible employment action harassment because "the employer may be able to escape liability for a hostile environment by establishing

---

quo" harassment. *Hulsey*, 367 F.3d at 1245 n.4. (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753-54 (1998), among others).

[4] To state a claim for hostile work environment based upon sexual harassment, a plaintiff must show:

> (1) that she belongs to a protected group; (2) that she has been subjected to unwelcome sexual harassment; (3) that the harassment was based on her sex; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that a basis for holding the employer liable exists.

*Hulsey*, 367 F.3d at 1244 (citations omitted).

as an affirmative defense that the employee failed to take prompt advantage of the employer's system for reporting and preventing harassment." *Id.*

Defendant argues that Plaintiff has failed to plead a plausible hostile work environment claim because she has not alleged facts that support an inference that Plaintiff endured severe or pervasive behavior. [Doc. 13-1.] The Court agrees. In determining whether alleged conduct is sufficiently severe or pervasive to support a harassment claim under Title VII, courts consider (1) the frequency of the allegedly discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct was threatening or humiliating, and (4) whether it unreasonably interfered with the plaintiff's performance at work. *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999). Here, Plaintiff alleges that her supervisor flirted with her "consistently," suggested that she "engage in a relationship with him," and isolated her so he could talk to her. [*See* Doc. 3 at 10.] But these allegations are too sparse and conclusory to support an inference that her supervisor's conduct was amounted to more than mere flirtation. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (stating that the conduct in question must be severe or pervasive enough that a reasonable person would find it hostile or abusive and noting that this requirement "ensure[s] that courts and juries do not mistake ordinary socializing in

14

the workplace—such as male-on-male horseplay or intersexual flirtation—for discriminatory 'conditions of employment'"); *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 584 (11th Cir. 2000) ("Words complimenting appearance may merely state the obvious, or they may be hopelessly hyperbolic.  Not uncommonly such words show a flirtatious purpose, but flirtation is not sexual harassment.").  Plaintiff does not even begin to describe what her supervisor allegedly said to her, how frequently her supervisor flirted with her over her two months of employment, or how her supervisor attempted to "isolate" her "so he could have conversations with [her]", leaving the Court to speculate as to how his alleged comments and behavior might have crossed the line from boorish to "objectively offensive as to alter the 'conditions' of the [Plaintiff's] employment." *Oncale*, 523 U.S. at 81.  And although she describes his conduct as "consistent" she does not include any facts to support such an assertion.  And it is unclear just how these alleged comments interfered with her ability to do her job.  Accordingly, Plaintiff's sex discrimination claim based on a hostile work environment fails to plausibly suggest the harassment at issue was sufficiently severe and pervasive and leaves the claim subject to dismissal.

The same cannot be said, however, for her tangible employment action harassment claim.  Defendant argues that the complaint "does not provide facts that would even demonstrate that Plaintiff's sex was even a motivating factor in her termination" because she alleges that she was fired for improperly discarding food. [Doc. 13-1 at 13.]   However, the Court is constrained to disagree.   Liberally construing the complaint and its exhibits, Plaintiff has alleged that after she rejected her supervisor's advances, he *ostensibly* fired her for violating company policy when, in fact, she had complied with the policy and she was instead "terminated [for] refusing my Supervisor[']s sexual advances."  [*See* Doc. 3 at 10.]   At this juncture, the Court cannot say that Plaintiff has failed to state a claim for tangible employment action harassment based on sex in light of these allegations.   As a result, this claim should be permitted to proceed.[5]

---

[5] Defendant argues that Plaintiff's harassment claim fails because she alleged on the one hand that she had no one to report her supervisor to, but the complaint "also states that Plaintiff was told during the hiring process to report any issues with her supervisor."  [Doc. 13-1 at 12.]  Defendant contends that because "the Complaint neither contains an allegation that Plaintiff reported the behavior through any established channels, nor an allegation that the Company had knowledge of any harassment, such that the Company could be liable, the sexual harassment claim should be dismissed."  [*Id.*]   The Court reads the complaint differently.  Plaintiff alleged that she "was told upon the hiring process to report to [her supervisor] if issues [arose]."  [Doc. 3 at 7.]  In other words, Plaintiff's sole avenue of reporting harassment was to report it to her supervisor—*i.e.*, the alleged

### D.    Retaliation under Title VII

Plaintiff also marked retaliation as a basis for her complaint.  To state a prima facie claim of retaliation under Title VII, a plaintiff mush allege that (1) she was engaged in an activity protected under Title VII, (2) she suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse employment action.  *See Entrekin v. City of Panama City, Fla.*, 376 F. App'x 987, 993-94 (11th Cir. 2010) (citing *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001)).  Under Title VII, there are two types of statutorily protected activities that may form the basis for a retaliation claim.  *See* 42 U.S.C. § 2000e-3.  The first is contained in the "participation clause," which provides protection to an employee who "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).  The participation clause "protects proceedings and activities which occur in conjunction with or after the filing of a formal charge with the EEOC . . . ."  *EEOC v. Total Sys. Servs., Inc.*, 221 F.3d

---

harasser—which she did.  Moreover, to the degree that Plaintiff contends that her supervisor fired her because she rebuffed his advances, the employer's knowledge is unnecessary in the context of a tangible employment action claim.  *See Hulsey*, 367 F.3d at 1245.

1171, 1174 (11th Cir. 2000).  The second type of protected activity is contained in the "opposition clause," which provides protection to an employee who "has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).  The opposition clause protects activity that occurs before or separately from the filing of a formal charge with the EEOC, such as filing an internal complaint of discrimination with an employer or informally complaining of discrimination to supervisors.  *Pipkins v. City of Temple Terrace, Fla.*, 267 F.3d 1197, 1201 (11th Cir. 2001) (citing *Rollins v. Fla. Dep't of Law Enf't*, 868 F.2d 397, 400 (11th Cir. 1989)).  A plaintiff who seeks protection under the opposition clause must have a good faith, reasonable belief that the conduct was unlawful under Title VII and actually have opposed that conduct.  *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999); *Rollins*, 868 F.2d at 400.

Here, Plaintiff's complaint fails to plausibly allege that she engaged in protected activity that was causally related to an adverse employment action.  The only activity in which she engaged that would fall within the participation clause was her filing an EEOC charge of discrimination, but that occurred in January 2023, after she was fired and, therefore, she could not have suffered a causally-connected adverse employment action.  As to the opposition clause, Plaintiff

18

concedes in her complaint that she did not report her supervisor's alleged conduct to anyone else with Defendant. The closest that Plaintiff comes to alleging that she engaged in conduct that could fall within the purview of the opposition clause was that she "informed [her supervisor] that his conduct was unwelcomed and that [she] was not interested." [Doc. 3 at 10.] But merely rebuffing a supervisor's advances is not necessarily enough: Plaintiff must allege facts supporting an inference that she "had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997). "The objective reasonableness of an employee's belief that her employer has engaged in an unlawful employment practice must be measured against existing substantive law." *Clover*, 176 F.3d at 1351. That inquiry relies, in turn, on whether the alleged harassment "was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment." *Id.* (citation omitted). As explained in the preceding section, Plaintiff's complaint does not sufficiently allege that she her supervisor's conduct

was sufficiently severe or pervasive.[6]  Accordingly, Plaintiff's complaint also fails to state a plausible claim of retaliation under Title VII.[7]

## V.    CONCLUSION

In sum, it is **RECOMMENDED** that Defendant's motion to dismiss be **GRANTED IN PART AND DENIED IN PART**.   Specifically, it is recommended that Plaintiff's sex discrimination claim be **ALLOWED TO PROCEED** as a tangible employment action harassment claim, but that Plaintiff's other claims—for purported hostile work environment sexual harassment, race discrimination, and religious discrimination claims under Title VII; for age discrimination under the ADEA; and for disability discrimination under the ADA—be **DISMISSED**.

---

[6] Plaintiff's tangible employment action harassment claim, meanwhile, only materialized with her discharge (that is, upon her actually suffering an adverse employment action), and, thus, cannot form the basis of a retaliation claim in relation to that same action.

[7] Defendant also argues that the complaint should be dismissed as it is a "shotgun" complaint.  If anything, the complaint is so devoid of factual content, that its main defect is a lack of factual allegations, rather than too many.  In any event, the remedy is to order repleading, rather than dismissal.  *See Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1280 (11th Cir. 2006).

It is **FURTHER RECOMMENDED** that Plaintiff's motion for default judgment [Doc. 15] and motion to strike affirmative defenses [Doc. 16] be **DENIED**.

Finally, Defendant's motion for an extension of time to response to the motion for default judgment and motion to strike [Doc. 17] is **DENIED AS MOOT**.

SO ORDERED and RECOMMENDED this 7th day of September, 2023.

_____
JOHN K. LARKINS III
United States Magistrate Judge

21